## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JOSEPH KEVIN MAGRINI,**

      **Petitioner,**

**v.**                                        **Case No. 8:22-cv-824-MSS-NHA**

**SECRETARY, DEPARTMENT OF
CORRECTIONS,**

      **Respondent.**

_____

## ORDER

Joseph Kevin Magrini petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state-court convictions for trafficking in illegal drugs and sale or delivery of a controlled substance. After reviewing the petition (Dkt. 1), the response, the appendix containing the relevant state-court record (Dkts. 16, 18), and the reply (Dkt. 21), the Court **DENIES** the petition.

## I.    BACKGROUND

This case arises from Magrini's sale of oxycodone and Xanax to an undercover detective with the Sarasota County Sheriff's Office. (Dkt. 18-2, Ex. 3, at 111-12) Magrini was charged for his role in two separate transactions, one on March 12, 2010, and the other on April 1, 2010. (Id., Ex. 2) The charge related to the March 12, 2010 sale was severed, and Magrini went to trial on the other counts. (Id., Ex. 3, at 94)

At trial, the detective testified that he met Magrini through a confidential informant, that he and Magrini spoke "by phone and in person" for two or three

months, and that they discussed the sale of "large quantities of oxycodone." (Id. at 111) The detective told Magrini that he was "from up north" where oxycodone sold "for a larger amount." (Id. at 112) His stated "purpose" was "to purchase oxycodone from [Magrini]" and then sell the drugs "up north." (Id.) The two ultimately agreed to complete the transaction on April 1, 2010. (Id.) At the appointed time and place, the detective handed Magrini $16,000 in cash in exchange for 133.20 grams of oxycodone. (Id. at 112-13, 149) Magrini also gave the detective 26.22 grams of Xanax. (Id.) The transaction was recorded on video, and Magrini was arrested immediately after the drugs and money changed hands. (Id. at 115-16)

The jury found Magrini guilty of (1) trafficking in 28 or more grams of oxycodone and (2) sale or delivery of Xanax. (Id., Ex. 4) Magrini subsequently pled *nolo contendere* to the severed count—sale or delivery of oxycodone on March 12, 2010. (Id., Ex. 5) As a result of the trafficking conviction, Magrini faced a mandatory minimum sentence of 25 years' imprisonment. See Fla. Stat. § 893.135(1)(c)1 (providing that any person who sells "28 grams or more, but less than 30 kilograms" of "oxycodone" "shall be sentenced to a mandatory minimum term of imprisonment of 25 calendar years") (2010). The trial court imposed the mandatory minimum sentence of 25 years' imprisonment for the trafficking count. (Dkt. 18-2, Ex. 7) It also imposed concurrent sentences of 57.15 months for sale or delivery of Xanax and 29.1 months for sale or delivery of oxycodone. (Id.)

Following an unsuccessful direct appeal, Magrini moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Id., Exs. 13, 15, 28; Dkt. 18-

3, Exs. 31, 33) The postconviction court summarily denied relief, and the appellate court affirmed without opinion. (Dkt. 18-3, Exs. 34, 36, 39) This federal habeas petition followed. (Dkt. 1)

## II.    LEGAL STANDARDS

### A.    AEDPA

Because Magrini filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), AEDPA governs his claims. Lindh v. Murphy, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13

(2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Clearly established federal law refers to the holding of an opinion by the United States Supreme Court at the time of the relevant state-court decision. Id. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 694 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

## B.    Ineffective Assistance of Counsel

Magrini asserts ineffective assistance of counsel—a difficult claim to sustain. Strickland v. Washington, 466 U.S. 668, 687 (1984), explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one." Id. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690-91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

Because the standards under Strickland and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" Nance v. Warden, Ga. Diag. Prison,

922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

The appellate court affirmed Magrini's convictions, as well the denial of postconviction relief, without discussion. (Dkt. 18-2, Ex. 13; Dkt. 18-3, Ex. 39) A federal court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). Because the postconviction court provided reasons for denying Magrini's claims in written orders, (Dkt. 18-3, Exs. 34, 36), this Court evaluates those reasons under § 2254(d).

## III.    DISCUSSION

### A.    Ground One—Failure to Raise Entrapment Defense

Magrini faults trial counsel for failing to pursue an entrapment defense. (Dkt. 1 at 5) He elaborated on this claim in his Rule 3.850 motion. (Dkt. 18-3, Ex. 33, at 3-10) There, Magrini argued that he was entrapped because the undercover detective and the confidential informant "induced [him] to commit the charged offenses," which he "was not predisposed to commit" beforehand. (Id. at 7-8) According to Magrini, the confidential informant initially sought oxycodone "under the pretext that she suffered from drug withdrawals." (Id. at 5) Moreover, during the March 12, 2010 transaction, the detective "interrupted" Magrini's discussion of "the new windows he was planning to have installed in his house" and "pointedly" asked for oxycodone. (Id. at 5) Finally, Magrini allegedly "attempted" to avoid the April 1, 2010 "meeting," but the detective "insisted the deal take place as planned, continually calling . . . , [with] each call

6

becoming more demanding." (<u>Id.</u> at 6) The detective allegedly told Magrini that "it would not be good" for him if he failed to obtain the oxycodone. (<u>Id.</u>)

In Magrini's view, had counsel "been more familiar with the law . . . and the facts of this case," he "would have realized entrapment existed." (<u>Id.</u> at 9) Using this defense, counsel could have shown that "government inducement led [Magrini] to the charged offenses," and that the prosecution lacked "sufficient evidence of predisposition prior to and independent of the government conduct." (<u>Id.</u> at 10)

The postconviction court rejected this claim, finding that Magrini suffered no prejudice because an entrapment defense was "conclusively refute[d]" by the record. (<u>Id.</u>, Ex. 36, at 7-8) The court explained that under Florida law, "entrapment may be either objective or subjective." (<u>Id.</u> at 5) Objective entrapment, the court noted, "occurs when law enforcement's conduct is so outrageous that it violates a defendant's due process rights." (<u>Id.</u>) By contrast, subjective entrapment "largely turns on a defendant's predisposition to commit the charged offense." (<u>Id.</u>) As the court explained, subjective entrapment requires proof that "a government agent induced [the defendant] to commit the offense and that he or she was not predisposed to do so." (<u>Id.</u> at 6) The court interpreted Magrini's claim as alleging that counsel should have pursued a subjective entrapment defense. (<u>Id.</u> at 7-8)

Applying Florida law, the court held that the "transcript of [one of the] undercover drug purchase[s]" was "damning to [the] suggested entrapment defense." (<u>Id.</u> at 6-7) During this transaction, Magrini offered to "connect" the detective with a "doctor" who "for a sum of money would forge MRI and prescription history records

for the purpose of enabling [the detective] to illegally obtain Xanax[ ], Roxy's, and Oxy's." (<u>Id.</u> at 7) Magrini also "boast[ed]" that he "usually [received] a cut ($100) for 'hook[ing] people up with the doctor' and 'usually insist[ed] on sponsoring them the first time.'" (<u>Id.</u> (citation omitted)) In addition, Magrini told the detective that he used "'a special peanut butter' to conceal his shipments of 100 to 200 pills at a time in the mail." (<u>Id.</u> (citation omitted)) Indeed, Magrini said, "I've been shipping coke and weed, all kinds of (inaudible) like that for years, man. . . . And I ain't been busted." (<u>Id.</u> (citation omitted))

Based on these "recorded admissions," the court found that the prosecution could have "refute[d]" a subjective entrapment defense by pointing to Magrini's "prior drug-related offenses to demonstrate [his] predisposition to sell and distribute narcotics." (<u>Id.</u>) Thus, the court found no reasonable probability that "the outcome of [the] trial would have been different" had counsel pursued a subjective entrapment defense. (<u>Id.</u> at 7-8)

The rejection of this claim was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective assistance] claim . . . turns on state law." <u>Pinkney v. Sec'y, DOC</u>, 876 F.3d 1290, 1295 (11th Cir. 2017). That is the case here. The postconviction court found that Magrini suffered no prejudice because, as a matter of Florida law, a subjective entrapment defense lacked merit. (Dkt. 18-3, Ex. 36, at 7-8) Thus, the postconviction court "already has told us how the issue[ ] would have been resolved under Florida state law had [counsel] done

what [Magrini] argues he should have done." Herring v. Sec'y. Dep't of Corr., 397 F.3d 1338, 1354-55 (11th Cir. 2005). That determination is binding on federal habeas review. See, e.g., Stanton v. Jones, No. 3:16-cv-102-MCR-EMT, 2017 WL 9478493, at *16 (N.D. Fla. Aug. 29, 2017) ("To the extent Petitioner's [ineffective assistance] claim is based upon defense counsel's failure to assert entrapment and prescription defenses under Florida state law, this court must defer to the state court's determination that Petitioner had no viable entrapment or prescription defense under Florida law."), adopted by 2018 WL 2392512 (N.D. Fla. May 25, 2018).

In short, the postconviction court "authoritatively decided as a matter of [Florida] law" that a subjective entrapment defense lacked merit. Calhoun v. Warden, Baldwin State Prison, 92 F.4th 1338, 1351 (11th Cir. 2024). It is well established that a petitioner is not "prejudiced by his counsel's failure" to "raise a meritless claim." Hittson v. GDCP Warden, 759 F.3d 1210, 1262 (11th Cir. 2014). Thus, the postconviction court reasonably concluded that Magrini suffered no prejudice from counsel's failure to raise a subjective entrapment defense.

Even if the issue were the Court's to decide, Magrini would not be entitled to relief. Subjective entrapment "focuses on whether the defendant was predisposed to commit the crime." Blanco v. State, 218 So. 3d 939, 943 (Fla. 3d DCA 2017). "This inquiry turns on whether the defendant was an 'unwary innocent' who had no predisposition to commit the crime but was lured into doing so, or, instead, an 'unwary criminal' who readily availed himself or herself of the opportunity to commit the crime." Id. As the postconviction court explained, Magrini boasted to the undercover

detective that (1) he "hook[ed] people up with [a] doctor" who illegally dispensed narcotics, (2) he shipped illegal drugs in a "special peanut butter" to avoid detection, and (3) he had "been shipping coke and weed . . . for years" without getting caught. (Dkt. 18-3, Ex. 47, at 9, 11-13) Because Magrini "portrayed himself as being well-versed in drug dealing," he cannot show an absence of predisposition to commit the charged offenses. Strickland v. State, 588 So. 2d 269, 271 (Fla. 4th DCA 1991); see also Harris v. State, 279 So. 3d 268, 270 (Fla. 5th DCA 2019) (noting that "[t]he state may prove predisposition with evidence of the defendant's prior criminal activities, his reputation for such activities, [or] reasonable suspicion of his involvement in such activity"). Counsel was not deficient for failing to raise a meritless defense of subjective entrapment.

In his federal petition, Magrini contends that the postconviction court erroneously failed to consider the "objective entrapment side of [his] claim." (Dkt. 1 at 6) In support, he alleges that the undercover detective "threatened [him] with a gun to get [him] to make the April 1, 2010 sale." (Id. at 5) In his Rule 3.850 motion, however, Magrini did not claim that the detective ever threatened him with a gun. (Dkt. 18-3, Ex. 33, at 3-10) Nor did he argue that the detective engaged in objective entrapment—which "focuses on the conduct of law enforcement" and requires proof of conduct that "so offends decency or a sense of justice that judicial power may not be exercised to obtain a conviction." Blanco, 896 So. 2d at 901. Instead, Magrini contended that "the State, through the [confidential informant], induced [him] to commit the charged offenses, as [he] was not predisposed to commit them"

beforehand. (Dkt. 18-3, Ex. 33, at 8) This argument sounds in subjective entrapment, which "focuses on the issues of inducement and the defendant's predisposition." Blanco, 896 So. 2d at 901. Indeed, Magrini quoted the statutory codification of the subjective entrapment defense, but he did not set forth the standard governing objective entrapment. (Compare Dkt. 18-3, Ex. 33, at 8-9, with Fla. Stat. § 777.201(1))

Magrini's new allegations of objective entrapment cannot be considered on federal habeas review. "[A] review of a state court adjudication on the merits in light of allegations not presented to the state court—for example, by examining additional facts or claims presented for the first time in a petitioner's federal habeas petition— would insufficiently respect the historic and still vital relation of mutual respect and common purpose existing between the States and the federal courts." Borden v. Allen, 646 F.3d 785, 816 (11th Cir. 2011). Accordingly, this Court "do[es] not consider [Magrini's] supplemental allegations . . . when reviewing the reasonableness of the state court's resolution of this claim, which was based on the allegations before it." Powell v. Allen, 602 F.3d 1263, 1273 n.8 (11th Cir. 2010); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). As explained above, the postconviction court reasonably rejected the claim that Magrini raised in his Rule 3.850 motion.[1]

---

[1] Regardless, the allegations in Magrini's Rule 3.850 motion were insufficient to establish objective entrapment. "Florida courts have found objective entrapment only in a few circumstances where law enforcement's actions rose to the level of 'outrageous' government conduct." State v. Harper, 254 So.

**B.    Ground Two—Failure to Seek Downward Departure Based on
Sentence Manipulation**

Magrini contends that trial counsel should have sought a "depart[ure] from the
minimum mandatory sentence in this case" based on "sentence manipulation." (Dkt.
1 at 8; Dkt. 18-3, Ex. 33, at 12-13) Under Florida law, sentence manipulation occurs
"when law enforcement allows a defendant to continue criminal activities for no
reason other than to enhance his or her sentence." State v. Washington, 277 So. 3d
1142, 1145 (Fla. 5th DCA 2019). A finding of sentence manipulation gives a trial court
"discretion to impose a downward departure sentence"—that is, a sentence below that
contemplated by Florida's sentencing guidelines. State v. Steadman, 827 So. 2d 1022,
1025 (Fla. 3d DCA 2002). According to Magrini, the undercover detective engaged in
sentence manipulation by prolonging the "investigation . . . for the sole purpose of
enhancing [his] sentence." (Dkt. 18-3, Ex. 33, at 12)

The postconviction court rejected this claim. (Id., Ex. 36, at 11) It held that
counsel "could not, in good faith, have made [an] . . . argument for downward
departure because there was no law enforcement intent to engage in manipulation of
[Magrini's] sentence." (Id. at 10-11) The court explained that, under Florida law, a
"claim of sentencing manipulation" turns on "the intent of law enforcement"—that is,

---

3d 479, 484 (Fla. 4th DCA 2018); see also State v. Williams, 623 So. 2d 462, 466 (Fla. 1993) (finding
objective entrapment where law enforcement "acted illegally in manufacturing the crack cocaine it
used in the reverse-sting operation which led to [defendant's] arrest"). Objective entrapment does not
occur, however, simply because law enforcement "repeatedly . . . badger[s] [a defendant] into"
committing an offense. State v. Figuereo, 761 So. 2d 1252, 1255 (Fla. 3d DCA 2000). In his Rule
3.850 motion, Magrini alleged that law enforcement "repeatedly attempt[ed] to persuade or implant
the idea to [him] about making drug deals." (Dkt. 18-3, Ex. 33, at 9) This does not rise "to the level of
'outrageous' government conduct." Harper, 254 So. 3d at 484.

whether "the sting operation continued only to enhance [a] defendant's sentence or [whether] legitimate law enforcement reasons exist[ed] to support the police conduct, such as to determine the extent of the criminal enterprise, to establish [a] defendant's guilt beyond a reasonable doubt, or to uncover any co-conspirators." (Id. at 8) The court noted that Magrini's case did not involve "multiple purchases of similar quantities within the same location, but rather a singular effort by law enforcement to investigate a significant purchase of prescription pills." (Id. at 9) Indeed, "the undercover investigation of [Magrini] lasted approximately two to three months, the primary purpose of which involved a significant transaction of Oxycodone pills for sale 'up north.'" (Id.) As the court explained, sentence manipulation is "generally" inapplicable "where the time period is short and the number of transactions [is] few." (Id. at 10) Moreover, the detective's "cross-examination [at trial] did not reveal an alternate or illegitimate purpose to investigate [Magrini]." (Id.) Thus, the court found that Magrini "failed to meet his burden to establish competent, substantial evidence of sentencing manipulation." (Id.)

This ruling was reasonable. The postconviction court found that counsel was not deficient because any claim of sentence manipulation would have failed under Florida law. (Id.) Thus, the postconviction court "already has told us how the issue[] would have been resolved under Florida state law had [counsel] done what [Magrini] argues he should have done." Herring, 397 F.3d at 1354-55. This Court is bound by that determination. See Williams v. Sec'y, Fla. Dep't of Corr., No. 3:16-cv-522-TJC-MCR, 2019 WL 3207474, at *22 (M.D. Fla. July 16, 2019) (federal habeas court "must

defer to" state court's conclusion that "Petitioner failed to establish sentence manipulation" under Florida law). As a result, the postconviction court reasonably concluded that counsel was not deficient for failing to seek a downward departure based on sentence manipulation. See Freeman v. Atty. Gen., 536 F.3d 1225, 1233 (11th Cir. 2008) (noting that "[a] lawyer cannot be deficient for failing to raise a meritless claim").

Moreover, any claim of sentence manipulation would have failed for an additional reason not mentioned by the postconviction court. As explained above, Magrini was subject to—and received—a mandatory minimum sentence of 25 years' imprisonment. See Fla. Stat. § 893.135(1)(c)1 (providing that any person who sells "28 grams or more, but less than 30 kilograms" of "oxycodone" "shall be sentenced to a mandatory minimum term of imprisonment of 25 calendar years") (2010). "[W]hen there is a mandatory minimum sentencing requirement, a trial judge cannot impose a downward departure sentence below the mandatory minimum." State v. Sawyer, 350 So. 3d 427, 430 n.2 (Fla. 5th DCA 2022). Indeed, "the sentencing statutes in Florida do not permit the judge to avoid the minimum mandatory provisions" even when "there is evidence of police inducement . . . leading to the quantity of the contraband possessed or sold to be greater than the defendant originally had the disposition to possess or sell." Kelley v. State, 821 So. 2d 1255, 1257 (Fla. 4th DCA 2002). For this reason, too, counsel had no basis to seek a downward departure for sentence manipulation.

**C.    Ground Three—Failure to Present Involuntary Intoxication Defense**

Magrini argues that trial counsel provided ineffective assistance by failing to raise an involuntary intoxication defense. (Dkt. 1 at 11) According to Magrini, he was "prescribed [a] high dosage of OxyContin, Roxicodone, and Xanax for several years prior to" the charged offenses. (Id.) Magrini allegedly "never took more than the prescribed amount," but this dosage left him "in a state of intoxication and impairment" during the transactions, thus "releas[ing] [him] of criminal responsibility." (Dkt. 18-3, Ex. 33, at 14-16)

The postconviction court rejected this claim on the ground that a "defense of involuntary intoxication" would have been "meritless." (Id., Ex. 36, at 12) The court explained that Florida law permits a "defense of involuntary intoxication resulting from 'a lawful prescription issued to [a] defendant by a practitioner.'" (Id. (quoting Jacobson v. State, 171 So. 3d 188, 190 (Fla. 4th DCA 2015))) This defense "applies when the defendant unexpectedly becomes intoxicated by prescribed medication that is *taken in a lawful manner*." Jacobson, 171 So. 3d at 190 (emphasis added). The court noted that, before trial, Magrini underwent a "competency examination."[2] (Dkt. 18-3, Ex. 36, at 11-12) The expert evaluation noted that Magrini "admitted to a history of abusing Xanax, Roxicodone, acid, cocaine, and ecstasy." (Id. at 12) Based on this admission, the court held that Magrin could not "demonstrate either prong of

---

[2] As explained below in connection with Ground Five, Magrini was ultimately found competent to stand trial.

<u>Strickland</u> by counsel's alleged failure to raise" a "meritless" defense of "involuntary intoxication." (<u>Id.</u>)

The postconviction court acted reasonably in rejecting this claim. The viability of an involuntary intoxication defense is a matter of Florida law. <u>See</u> <u>Moore v. Sec'y, Dep't of Corr.</u>, No. 8:18-cv-1555-MSS-AAS, 2021 WL 3550371, at *9 (M.D. Fla. Aug. 11, 2021) (whether "involuntary intoxication defense applie[d] to the crime of sexual battery [was] an issue of state law"). The postconviction court held that an involuntary intoxication defense would have been "meritless" in Magrini's case. (Dkt. 18-3, Ex. 36, at 12) That determination is binding on federal habeas review. <u>See</u> <u>Brown v. Dep't of Corr.</u>, No. 22-11344-H, 2023 WL 3064699, at *2 (11th Cir. Feb. 17, 2023) ("[B]ecause the validity of the [ineffective assistance] claim turned on state law, specifically, Florida law regarding the availability of a voluntary-intoxication defense, deference was due to the state post-conviction court's conclusion that a voluntary-intoxication defense had not been available to [petitioner]."). Thus, the postconviction court reasonably concluded that counsel was not deficient for failing to raise an involuntary intoxication defense. <u>See</u> <u>Freeman</u>, 536 F.3d at 1233 (noting that "[a] lawyer cannot be deficient for failing to raise a meritless claim").

### D. Ground Four—Failure to Challenge Modification of Bond

Magrini faults trial counsel for failing to challenge the trial court's modification of his bond. (Dkt. 1 at 13) Following his arrest, Magrini posted bond. (Dkt. 18-3, Ex. 52, at 1) Eight months later, he was arrested on five counts of "battery on a law enforcement officer." (<u>Id.</u>) The prosecution moved to revoke or increase Magrini's

bond. (Id. at 1-2) The court elected to increase the bond amount for Magrini's drug charges, and he was unable to post bond. (Id., Ex. 53) According to Magrini, counsel should have argued that the bond modification "disregarded" his "right to bail that [was] not excessive." (Id., Ex. 33, at 19) Had counsel secured his release, Magrini allegedly "would have been better able to prepare a sufficient defense." (Id.) Specifically, Magrini could have (1) sought "proper mental health and substance abuse treatment allowing [him] to . . . sufficiently communicate with his lawyer and family members," (2) helped "obtain . . . proper defense experts to aid in his trial ([e.g.,] defense chemist, psychologist, witnesses, etc.)," and (3) received "an amount of medication that would have allowed better communication with his lawyer and [the ability to] properly understand the proceedings and the outcome." (Id. at 19-20)

The postconviction court rejected this claim for lack of prejudice. (Id., Ex. 34, at 6) It noted that "[s]peculation and conjecture are insufficient" to establish prejudice under Strickland. (Id.) According to the court, Magrini "simply allege[d] his freedom would have enabled him to better prepare for trial." (Id.) The "examples he provide[d] in support of this allegation—procuring witnesses, seeking substance abuse treatment, communicating with his attorney—[were] insufficient showings of prejudice under a Strickland analysis." (Id.) Thus, the court found that Magrini did not show prejudice from the failure to challenge the bond modification. (Id.)

The rejection of this claim was reasonable. "The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." Reed v. Sec'y, Fla. Dep't of Corr., 767

17

F.3d 1252, 1261 (11th Cir. 2014). "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. Instead, "counsel's errors [must be] so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." Id. at 687. "Applying AEDPA to Strickland's prejudice standard, [this Court] must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice [Magrini]—that there was no substantial likelihood of a different result—was so obviously wrong that its error lies beyond any possibility for fairminded disagreement." Mungin v. Sec'y, Fla. Dep't of Corr., 89 F.4th 1308, 1317 (11th Cir. 2024).

Magrini cannot meet this demanding standard. As the postconviction court explained, Magrini merely speculated that his pretrial release would have enabled him to "better . . . prepare a sufficient defense." (Dkt. 18-3, Ex. 33, at 19) He did not explain how his defense would have changed had he been in a better position to "understand the proceedings" or "communicate with his lawyer and family members." (Id. at 19-20) And while he claimed that pretrial release would have allowed him to seek out "defense experts," he failed to explain how these unidentified experts would have aided his defense. (Id. at 20) Magrini's "vague and conclusory allegations" were thus insufficient to establish prejudice. Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1332-33 (11th Cir. 2012); see also Holt v. Sec'y, Fla. Dep't of Corr., 489 F. App'x 336, 338 (11th Cir. 2012) (state court reasonably rejected ineffective assistance claim based on failure to retain expert because "[i]t [was] speculative that an expert witness

would in fact have testified" favorably to the defense)[3]; Jamison v. United States, No. 3:18-cr-9-CAR-CHW, 2023 WL 8723221, at *6 (M.D. Ga. Nov. 22, 2023) (no prejudice where defendant failed to show "how he might have fared better . . . with more communication with his lawyer"), adopted by 2023 WL 8720660 (M.D. Ga. Dec. 18, 2023).

### E.   Ground Five—Failure to Properly Handle Competency Issue

Lastly, Magrini contends that trial counsel failed to properly address his competency to stand trial. (Dkt. 1 at 15; Dkt. 18-3, Ex. 33, at 20) During a pretrial hearing, counsel requested a competency evaluation of Magrini based on his "erratic behavior" in jail. (Dkt. 18-3, Ex. 49, at 4-5, 7) Counsel stated that he did not "believe" Magrini was "incompetent," but he wished to "err on the side of caution and at least have him evaluated." (Id. at 7) The court ordered an evaluation "in an abundance of caution." (Id. at 9) Soon after, a psychologist evaluated Magrini and found that he met "the standard to proceed to trial at this time." (Id., Ex. 50, at 118) The psychologist noted that, although Magrini initially claimed to have "no memory of anything within the last two years," he later "displayed normal intelligence and seemed quite able to discuss his legal case." (Id.) The psychologist thus found that Magrini was "malingering" and had "a full capacity to participate in his legal defense." (Id.) During a subsequent hearing, the parties "stipulated to the use of one expert and the use of

---

[3] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000).

one written report" to determine Magrini's competency. (Id., Ex. 51) Based on the report, the court found Magrini competent to stand trial. (Id.)

Magrini now contends that counsel should have (1) "had [him] examined by a second expert" and (2) "ensure[d] [his] presence during" the competency hearing. (Id., Ex. 33, at 24; see also Dkt. 1 at 15) According to Magrini, he was "heavily medicated" "throughout the trial process," and his "sanity" was "never addressed and [is] still in question." (Dkt. 18-3, Ex. 33, at 24)

Even under de novo review, this claim fails for lack of prejudice. To show prejudice in this context, Magrini must establish that "if his trial counsel had performed as he [suggests], there is a reasonable probability that the trial judge would have determined that [he] was incompetent to stand trial." Oats v. Singletary, 141 F.3d 1018, 1025 (11th Cir. 1998). The test for determining competence to stand trial is "whether a criminal defendant [1] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and [2] whether he has a rational as well as factual understanding of the proceedings against him." Drope v. Missouri, 420 U.S. 162, 171 (1975).

Magrini fails to establish a reasonable probability that he "would have been found incompetent" had counsel requested another evaluation or ensured his presence at the hearing. Lawrence v. Sec'y, Fla. Dep't of Corr., 700 F.3d 464, 480 (11th Cir. 2012). He presents no evidence that a second evaluation would have led to a finding of incompetence, nor does he explain how his presence at the hearing would have affected the court's ruling. Moreover, although he claims he was "heavily medicated,"

Magrini offers no evidence that his medications "caused him to be confused and to lack understanding of the proceedings under the legal standard of competence." Sheley v. Singletary, 955 F.2d 1434, 1438 (11th Cir. 1992). Accordingly, Magrini fails to meet his burden of "affirmatively prov[ing] prejudice" from counsel's alleged mishandling of the competency issue.[4] Strickland, 466 U.S. at 693; see also Cox v. Sec'y, DOC, No. 2:11-cv-439-JES-UAM, 2013 WL 4734065, at *6 (M.D. Fla. Sept. 3, 2013) (no prejudice where petitioner "presented no evidence that" he "would have been found incompetent to proceed" and "nothing in the record indicate[d] that [he] was incompetent at the time of his trial").

## IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Magrini's petition for writ of habeas corpus, (Dkt. 1), is **DENIED**.

2. The Clerk is **DIRECTED** to enter judgment against Magrini and to **CLOSE** this case.

3. Because Magrini neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma*

---

[4] To the extent Magrini claims that counsel should have raised an involuntary intoxication defense, the Court fully addressed that issue above in its discussion of Ground Three. And to the extent Magrini faults counsel for not raising an insanity defense, he fails to establish a "reasonable probability that he would have prevailed on his insanity defense had he pursued it." Knowles v. Mirzayance, 556 U.S. 111, 127 (2009).

*pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473,

478 (2000).

**DONE** and **ORDERED** in Tampa, Florida, this 2nd day of June 2025.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE